PEARSON, MJ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STANLEY E. SMITH, | ) | CASE NO. 5:08CV2805 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | BENITA Y. PEARSON |
| | ) | |
| RICHARD GANSHEIMER, | ) | |
| WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

## Introduction

This Report and Recommendation is written in response to a petition for a writ of habeas corpus submitted by Stanley E. Smith, pursuant to 28 U.S.C. § 2254.  Smith has presented two Grounds for Relief: alleging that he was denied effective assistance of appellate counsel and that the State appellate court engaged in an unreasonable application of Federal Law.  ECF No. 1. Smith is incarcerated at Lake Erie Correctional Institution, serving an eight year sentence following his 2006 conviction for one count of felonious assault, one count of kidnaping, and one count of domestic violence.  Respondent admits having custody of Smith and asserts that the grounds presented in Smith's petition are procedurally defaulted.  ECF No. 8.  In his Revised Traverse, Smith did not address Respondent's assertion that his Petition is procedurally defaulted and instead argued the merits of his Grounds for Relief and introduced new arguments as to why

(5:08CV02805)

his Petition should be granted.  ECF No. 15.[1]

For the reasons that follow, the undersigned Magistrate Judge recommends that both Grounds One and Two be dismissed as procedurally defaulted and that the petition be dismissed in its entirety.  In his Revised Traverse, Smith requests an evidentiary hearing and permission to amend his Petition.  Also for the reasons provided herein, the undersigned recommends denial of both requests.

## I.  Factual and Procedural Background

### A.  Facts of the Underlying Offense and Disposition of Charges

#### 1.  Facts

The State appellate court's factual findings shall be presumed correct; petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Here, despite Smith's modified version of events in his Revised Traverse, Smith has failed to meet the burden of rebutting the presumption of correctness of the State appellate court's factual findings.  ECF No.15 at 2-8.  Accordingly, the Summit County Court of Appeals, Ninth Appellate District, (also "State appellate court"), found the facts of the underlying offenses and trial to be as follows:

---

[1]  On July 13, 2009, Smith filed his original Traverse.  ECF No. 10.  The original Traverse was incoherent in some places and was missing at least one page which gave the appearance that the arguments for Ground One were unintelligible and the arguments for Ground Two were missing.  On July 27, 2009, Smith filed a Motion of Petitioner to Accept for Review a Revised Traverse.  ECF No. 12.  On September 9, 2009, for the sake of clarity, the undersigned issued an Order granting Smith's motion.  ECF No. 14.  The Revised Traverse was filed on the same day.  ECF No. 15.  Pursuant to the same Order, the Respondent filed an Amended Sur-Reply to the Revised Traverse.  ECF No. 16.

2

(5:08CV02805)

In November of 2005, Appellant and Whitney Abrams ("Abrams"), the victim, were engaged to be married. The relationship ended in March of 2006. On April 11, 2006, Appellant went to Abrams' apartment. After talking outside, Appellant forced his way into the apartment. He then pushed Abrams into her room and locked the door. After some questioning by Appellant, Abrams informed him that she had been in contact with an ex-boyfriend. Appellant choked Abrams at least two times to the point where she could no longer breathe. Appellant took Abrams' wallet, keys and cell phone and pleaded with her to come to his dorm room at the University of Akron. In order to stop him from choking her, Abrams agreed to accompany him to his room. Appellant then used Abrams' keys to drive them in her car to his dorm. Once in his dorm room, Appellant choked Abrams several more times. According to Abrams, Appellant choked her approximately 10 to 15 times throughout the night and Appellant forced her to have sex with him. According to Appellant, Abrams voluntarily had sex with him. Appellant would not allow Abrams to leave his room until the next morning. When Abrams got back to her apartment she called her mother who in turn called the police. Abrams spoke with police at her apartment and then she was transported to the hospital via ambulance. Abrams' right cheek was bruised and she had broken blood vessels from her hairline across her eyes down her check to her nose. She also had broken blood vessels around her neck, a circular bruise on her chest, and her lips and mouth were swollen. A rape protocol kit was used because Abrams stated that Appellant forced her to have sex with him. The kit was examined by a DNA technician who confirmed that the vaginal swabs showed a DNA profile consistent with Appellant and Abrams.

On April 21, 2006, Appellant was indicted on one count of kidnapping, in violation of 2905.01(8)(1), one count of felonious assault, in violation of R.C. 2903.11(A)(1), one count of rape, in violation of R.C. 2907.02(A)(2), one count of sexual battery, in violation of R.C. 2907.03(A)(1), and one count of domestic violence, in violation of R.C. 2919.25(A). A supplemental indictment was filed on May 30, 2006, charging Appellant with a second count of kidnapping, in violation of 2905.01(A)(2)-(4). Appellant pled not guilty to the charges, and on September 18, 2006, the matter proceeded to a jury trial. At the close of the State's case, the trial court granted Appellant's Crim.R. 29 motion as to the initial kidnapping charge and the sexual battery charge. At the close of all evidence, the jury found Appellant guilty of kidnapping, felonious assault and domestic violence. Appellant was acquitted of rape. Appellant was sentenced to a total of eight years incarceration; four years on the kidnapping charge, four years on the felonious assault charge, and 90 days incarceration for domestic violence to run concurrent with the felonious assault conviction.

* * *

On direct examination, Abrams testified that on some nights she was unable to make dinner for Appellant and that he would become angry if she failed to tape a television

(5:08CV02805)

> show for him.  She stated that "at times [Appellant] would choke me for things like
> that."  She also testified that "I couldn't breathe that time.  He had never choked me
> so long ever. And he never choked me so hard."  According to Abrams, this is why
> she relented and had sex with Appellant.  On cross-examination, Appellant's counsel
> inquired as to why Abrams went with Appellant to his dorm room and why she did
> not try to escape. Abrams explained that because he had choked her before, she knew
> "he wouldn't stop until he got what he wanted."  She also stated that she "didn't want
> to call the police on him because I thought that it was going to be like every other
> time."  She testified that Appellant told her not to ever "call the cops on him because
> he'll come back and do what he wants to you."  On redirect examination, Abrams
> again stated that she did not ever call the police before because the choking had never
> resulted in as much damage as it did on April 11, 2006.  She also explained that she
> was afraid Appellant would hurt her if she called the police.  Finally, Abrams stated
> that she had screamed and yelled during past incidents of choking, but did not this
> time because no one ever came to help her.  According to Abrams, if she would
> scream for help, Appellant would just choke her harder.

ECF No. 8 at 2-3.

### 2.  Disposition of Charges

On April 21, 2006, Smith was indicted on one count of kidnaping, one count of rape, one

count of felonious assault, one count of sexual battery, and one count of domestic violence.  ECF

No. 8-2 at 131.  Smith pled not guilty to all charges.  On May 30, 2006, the State filed a

supplemental indictment to add an additional count of kidnaping.  *Id*.  Smith also pled not guilty

to the supplemental charge.  Smith was acquitted of one count of kidnaping, one count of sexual

battery, and one count of rape.  *Id*.  Smith was found guilty of one count of felonious assault, one

count of domestic violence, and one count of kidnaping.   Smith was sentenced to four years for

the assault charge, four years for the kidnaping charge, and 90 days for the domestic violence

charge for a total of eight years.  *Id*.  The 90 day sentence would be served concurrent with the

four years for felonious assault.  *Id*.

4

(5:08CV02805)

### B. Direct Appeal

On December 20, 2006, Smith's counsel filed a timely notice of appeal to the State appellate court. On February 6, 2007, Smith's counsel filed a merits brief setting forth the following assignments of error:

> 1. The trial court erred in permitting state witnesses to offer prejudicial "other acts" testimony in violation of Evidence Rules 403, 404, and R.C. §2945.59, which deprived him of his rights to a fair trial and substantive due process guaranteed by Article I, Section 10 of the Ohio Constitution and the Fifth and Fourteenth Amendment to the United States Constitution.

> 2. Appellant has been deprived of his right to fair trial by a jury of his peers due to the states' exclusion of an African American panel member and the trial court's erroneous decision to overrule his Batson challenge.

> 3. Appellant was denied his right to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendment to the United States Constitution due to his attorney's failure to (i) object to unfairly prejudicial "other acts" evidence, (ii) request jury instructions on lesser-included offenses while simultaneously making arguments that were inconsistent with Smith's claim of actual innocence, and (iii) ask that the court give curative instructions.

> 4. Appellant has been deprived of his liberty without due process of law by his convictions of felonious assault and domestic violence, which were not supported by sufficient evidence to prove his guilt beyond a reasonable doubt and against the manifest weight of the evidence.

ECF No. 8-2 at 27-28. Respondent filed a brief in response, and as a cross-appellant on the sexual offender classification hearing issue. ECF No. 8-2 at 51. On October 17, 2007, the State appellate court affirmed the judgment of the trial court and remanded the case for a sexual offender classification hearing. ECF No. 8-2 at 129.

Smith did not timely or otherwise file an appeal to the Ohio Supreme Court. ECF No. 8 at 5.

5

(5:08CV02805)

### C.  Joint 26(B) and 26(A) Application to Reopen and Reconsider Direct Appeal

On June 23, 2008, Smith's counsel filed a joint 26(B) Application for Reopening and

26(A) Application for Delayed Reconsideration.  Smith alleged the following assignments of

error:

> 1.  The appellate court committed plain error by reviewing the appeal without the
> complete transcript of the trial proceedings.
>
> 2.  Appellate counsel was ineffective for failing to provide the appellate court with
> a complete transcript of the trial proceedings.

ECF No. 8-2 at 157.

On July 15, 2008, the State appellate court denied Smith's joint Application, finding that

Smith's Application was not timely filed and that Smith had not shown "good cause" for the

delay.  ECF No. 8-2 at 197.  On August 22, 2009, Smith timely filed an appeal of the denial of

his joint 26(A) and 26(B) Application to the Ohio Supreme Court.  ECF No. 8-2 at 198.  Smith

alleged the following proposition of law:

> 1. The constitutional right of effective assistance of appellate counsel is violated
> where counsel failed to submit for appellate court's record of transcript in support of
> issue presented in violation of the Sixth and Fourteenth Amendments to the United
> States Constitution and Article I, Section 10 of the Ohio Constitution.

ECF No. 8-2 at 204.  On October 15, 2008, the Ohio Supreme Court denied Smith leave to

appeal and dismissed the appeal as not involving any substantial constitutional question.  ECF

No. 8-2 at 209.

### D.  Federal Habeas Corpus

On November 12, 2008, Smith filed the instant writ of habeas corpus petition setting

forth the following two grounds for relief:

6

(5:08CV02805)

**GROUND ONE: Denial of effective assistance of appellate counsel.**

Supporting Facts: Appellate counsel failed to provide to the court for review record/transcript of petit jury proceeding in which peremptory strike of a jury based on intentional race discrimination.

**GROUND TWO: The State appellate court engaged in an unreasonable application of federal law.**

Supporting Facts: The court failed to independently review the entire trial record in determining the claim of jury misconduct and order of the transcript.

ECF No. 1 at 4.  On May 14, 2009, Respondent filed a Return of Writ.  ECF No. 8.  On July 13, 2009, Smith filed a Traverse.  ECF No. 10.  On July 16, 2009, pursuant to the undersigned's standing order, (ECF No. 5), Respondent filed a Sur-Reply to Smith's Traverse.  ECF No. 11. On July 27, 2009, Smith filed a Motion to Accept for Review a Revised Traverse with the Revised Traverse attached.  ECF No. 12.  On September 9, 2009, the undersigned issued an Order granting Smith's motion.  ECF No. 14.  Pursuant to the same Order, the Respondent filed an Amended Sur-Reply to the Revised Traverse.  ECF No. 16.

## II.  Law and Analysis

### A.  Standard of Review

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") because Smith filed his habeas corpus petition after the effective date of the AEDPA.  *See Lindh v. Murphy, 521 U.S. 320, 326-27, 337 (1997).*  The Antiterrorism and Effective Death Penalty Act of 1996 altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  Before a petitioner's claims can be reviewed on the merits by a federal court, each claim must successfully overcome the

7

(5:08CV02805)

procedural barriers of time limitation, such as exhaustion, cognizability, and procedural default,

then AEDPA governs the Court's review of a habeas corpus petition.  As amended, 28 U.S.C. §

2254(d) provides:

> An application for writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State court
> proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only

if the state court's decision is contrary to, or involved an unreasonable application of, clearly

established federal law, or resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v.

Taylor*, 529 U.S. 362, 379-413 (2000).  Law is "clearly established" only by holdings of the

Supreme Court, not its dicta, and the law must be clearly established at the time of the

petitioner's conviction.  *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable

application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in state
> court.  Under the statute, a federal court may grant a writ of habeas corpus if the
> relevant state-court decision was either (1) "*contrary to* . . . clearly established
> Federal law, as determined by the Supreme Court of the United States," or (2)
> "*involved an unreasonable application of* . . . clearly established Federal law, as
> determined by the Supreme Court of the United States."

8

(5:08CV02805)

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).

A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a similar question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply.  *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence."  *Id.*

### B.  Procedural Barriers to Review

A petitioner must overcome several procedural barriers before a federal habeas court will review the merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### 1.  Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of

9

(5:08CV02805)

limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins

to run on the date judgment became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of

limitations is not an issue in this matter.

### 2.  **Exhaustion of State Remedies**

As a general rule, a state prisoner must exhaust all possible state remedies or have no

remaining state remedies before a federal court will review a petition for a writ of habeas corpus.

28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion

requirement is satisfied "once the federal claim has been fairly presented to the state courts."

*Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must

present it "to the state courts under the same theory in which it is later presented in federal

court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir.1998); *see also McMeans v. Brigano*, 228

F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due

process" do not "fairly present" claims that specific constitutional rights were violated.

*McMeans*, 228 F.3d at 681 *(citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984)).

In order to have fairly presented the substance of each of his federal constitutional claims

to the state courts, the petitioner must have given the highest court in the state in which he was

convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878,

881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim

to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying

upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of

constitutional law or in terms sufficiently particular to allege the denial of a specific

(5:08CV02805)

constitutional right; or (4) alleging facts that are obviously within the mainstream of

constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (*quoting Newton v.

Million*, 349 F.3d 873, 877 (6th Cir. 2003)); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th

Cir. 1993) *cert. denied*, 509 U.S. 907 (1993) (quotation omitted).

Unless an exception applies, the Court must dismiss a petition for lack of exhaustion if it

contains at least one issue that was not presented to the state courts so long as a remedy is still

available for the petitioner to pursue in the state courts.  *Rose v. Lundy*, 455 U.S. 509, 518-20,

(1982).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other

available remedies have been exhausted or that circumstances of peculiar urgency exist."  *Darr v.

Burford*, 339 U.S. 200, 218-19 (1950), *overruled* in part on other grounds, *Fay v. Noia*, 372 U.S.

391 (1963).  A petitioner will not be allowed to present claims never before presented in the state

courts unless he can show cause to excuse his failure to present the claims in the state courts and

actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for

which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### 3.  Procedural Default

A claim may become procedurally defaulted in two ways.  *Id.*  First, a petitioner may

procedurally default a claim by failing to comply with state procedural rules in presenting his

claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.

1986).  If, due to the petitioner's failure to comply with the procedural rule, the state court

declines to reach the merits of the issue, and the state procedural rule is an independent and

adequate grounds for precluding relief, the claim is procedurally defaulted.  *Id.*

11

(5:08CV02805)

Second, a petitioner may procedurally default a claim by failing to raise a claim in state

court and pursue that claim through the state's "ordinary appellate review procedures."

*O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition,

state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted.

*Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Thompson*, 501 U.S. at 731-32.  This

second type of procedural default is often confused with exhaustion. Exhaustion and procedural

default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to

remedies still available at the time of the federal petition."  *Engle*, 456 U.S. at 125 n. 28.  Where

state court remedies are no longer available to a petitioner because he failed to use them within

the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In

Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those

claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a

claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

The Sixth Circuit uses a four-step analysis to determine whether a claim is procedurally

defaulted.  *Maupin*, 785 F.2d at 138-39.  Under this test, the Court decides (1) whether the

petitioner failed to comply with an applicable state procedural rule; (2) whether the state courts

actually enforced the state procedural sanction; (3) whether the state procedural bar is an

"independent and adequate" state ground on which the state can foreclose federal review; and (4)

whether the petitioner has demonstrated "cause" and "prejudice."  *Id.*; *Barkley v. Konteh*, 240

F.Supp.2d 708 (N.D. Ohio 2002).

A petitioner's procedural default may be excused upon a showing of "cause" for the

12

(5:08CV02805)

procedural default and "actual prejudice" from the alleged error.  *Maupin*, 785 F.2d at 138-39.

"Demonstrating cause requires showing that an 'objective factor external to the defense impeded

counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412,

417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Ineffective

assistance of counsel can be cause for a procedural default.  *Carrier*, 477 U.S. at 488.  However,

the exhaustion doctrine "generally requires that a claim of ineffective assistance be presented to

the state courts as an independent claim before it may be used to establish cause for a procedural

default."  *Id.* at 489.  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was

infected with constitutional error."  *Id.*  It is not necessary, however, to resolve the issue of

prejudice if a petitioner has not shown cause.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986);

*Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

Finally, a petitioner's procedural default may also be excused where a petitioner is

actually innocent in order to prevent a "manifest injustice."  *See Thompson*, 501 U.S. at  749-50.

Conclusory statements are not enough–a petitioner must "support his allegations of constitutional

error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v.

Delo,* 513 U.S. 298, 324 (1995); *See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio

2007).

Respondent argues that Smith's Petition is barred due to procedural default.  This

argument is substantiated by the record.  For the reasons below,  the Court will not conduct a

merits review of Smith's Grounds for relief.  Rather, the undersigned recommends dismissal of

13

(5:08CV02805)

the entire petition due to the procedural default of both grounds for relief pled.

   **C.  Analysis**

   **1.  Grounds One and Two are barred due to Procedural Default**

   **i.  Ground One**[2]

Smith contends that his appellate counsel was constitutionally ineffective because he "failed to provide to the court for review record/transcript of Petit Jury proceeding in which premptory [sic] strike of a jury based on INTENTIONAL race discrimination." ECF No. 1 at 4. Respondent counters that Smith's claim is "procedurally defaulted due to his failure to 'fairly present' the claim in his untimely 26(B) proceeding." ECF No. 8 at 16.

   Generally, federal court will not review claims when the petitioner's failure to comply with a state procedural rule prevented the state court from reaching the merits of the claim. *Maupin,* 785 F.2d at 138.   For noncompliance with a state procedure to serve as a bar to habeas review, a state procedure must satisfy the standards set forth above in *Maupin*.

   In the instant matter, Smith did not raise Ground One on direct appeal.  Instead, he articulated it in his joint 26(B) and 26(A) Application.  Under Ohio App. R. 26(B)(1), such an application must be filed within ninety days of the State appellate court's decision.  The State appellate court, however, may excuse the failure to file a 26(B) application within the allotted time upon a showing of "good cause."  Ohio App. R. 26(B)(2)(b).  Likewise, under Ohio App. R. 26(A), such an application "shall be made in writing before the judgment or order of the court has been approved by the court and filed by the court with the clerk for journalization or within

---

   [2]  Ground One alleges: Denial of Effective Assistance of Appellate Counsel.

14

(5:08CV02805)

ten days after the announcement of the court's decision, whichever is the later."

It is undisputed that Smith did not file his joint Application within the required period of time.  ECF No. 8-2 at 157.  According to the State appellate court the matter was disposed of on October 17, 2007, and "appellant's application was filed June 23, 2008, clearly past the deadlines set forth in App. R. 26(A) and (B)(1)."  ECF No. 8-2 at 197.  Furthermore, the State appellate court held that Smith failed to establish "good cause" for filing his 26(B) Application 161 days late.  Applying the first part of the *Maupin* test, Smith failed to comply with an applicable state procedural rule, namely Rules 26(B) and 26(A).

The second part of the *Maupin* test was satisfied when the state court denied consideration of the petitioner's claim on the grounds of the state procedural default.  Because Smith did not timely file his joint Application, and further did not provide "good cause" for the untimeliness of his 26(B) Application, the State appellate court denied the joint Application and the Ohio Supreme Court obviously affirmed the appellate's decision when it dismissed the case.[3]

---

[3]  Applicable Ohio court rules indicate that the Ohio Supreme Court's denial of a motion for a delayed appeal is a procedural ruling rather than a ruling on the merits.  *Bonilla v. Hurley, 370 F.3d 494, 497 (6th Cir. 2004)*.  The Sixth Circuit has held that such a denial is sufficient to bar federal court review of a habeas corpus petition.  *Id.*

If the last state court judgment is an unreasoned order simply affirming in a formulary sense, the federal habeas court should "look through" the last order and examine the preceding reasoned order, and employ one of the following presumptions: 1) if the preceding opinion "fairly appear[s] to rest primarily upon federal law," *Thompson, 501 U.S. at 739-40*, it should be presumed that the last state court judgment did not rely on the procedural default; or 2) if the preceding opinion explicitly relies on the procedural default, it should be presumed that the last state court judgment likewise relied on the bar, and did not silently disregard the bar.  *Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)*; *Bonilla, 370 F.3d at 497*; *Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996)*.

(5:08CV02805)

With respect to the third part of the *Maupin* test, the Sixth Circuit has repeatedly held that "the timeliness requirements in Ohio App. R. 26(B) . . . are . . . actually enforced, adequate and independent state ground[s] upon which the Ohio courts consistently refuse to address [habeas] . . . claims." *Fautenberry v. Mitchell*, 515 F.3d 614, 640 (6th Cir. 2008); *see also Coleman v. Mitchell*, 244 F.3d 533, 539-40 (6th Cir. 2001) (finding that the petitioner procedurally defaulted his claim because he failed to comply with the requirements of Rule 26(B)).

The Sixth Circuit's decision in *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006), in which the court indicated that Rule 26(B) is not "firmly established and regularly followed" and that "[a] review of the relevant case law reveals that the Ohio Supreme Court has been erratic in its handling of untimely applications in capital cases," is distinguishable because (1) Rule 26(B) had not been enacted when the petitioner in *Franklin* filed his motion to re-open  and the Rule was not retroactive; and (2) even if Rule 26(B) was retroactive, it had not become firmly established and regularly followed by the time the petitioner in *Franklin* filed his motion.[4]  *See Id.* at 420-21; *see also Parker v. Bagley*, 543 F.3d 859, 861 (6th Cir. 2008); *see also Scuba v. Brigano*, 527 F.3d 479, 488 (6th Cir. 2007).  Furthermore, unlike the instant matter, *Franklin* was a capital case.

Smith, a non-capital Petitioner, filed his application to re-open his direct appeal long after the law regarding the timing of the filing of such applications became settled, and therefore is not

---

[4]  Amended Ohio App. R. 26(B) was enacted in July 1993.  *See Fautenberry*, 515 F.3d at 641.

16

(5:08CV02805)

subject to the rule in *Franklin*.  *Parker*, 543 F.3d at 862 ( "because Parker's petition arises in a

non-capital case and his application to reopen was filed beyond the ninety-day period, in June

2001, when the timeliness requirements of Rule 26(B) were firmly established and regularly

followed in non-capital cases, *Scuba* controls.").

Accordingly, Smith's ineffective assistance of appellate counsel claim is barred from

review by this Court, either as cause for default of his other habeas grounds or as an independent

claim, absent a showing of "cause and prejudice" or meeting the actual innocence threshold.

### a.  **"Cause and Prejudice"**

Smith does not directly address whether or not he can demonstrate "cause and prejudice",

however, Smith asserts that "arguably the outcome of the appeals would have been different, had

counsel ordered the *voir dire* transcript portion for appellate review."[5]  ECF No. 15 at 30.  He

also argues that

> any competent counsel would have cited to the record of the trial proceeding or
> provided for the Appeals Court record of specific violations for the court's
> review.  *See Cannon v. Barry*, 727 F.2d 1020 (11th Cir. 1984) [(]writ of habeas
> corpus granted when counsel failed to file a brief on direct appeals[)].

---

[5]  In his Revised Traverse, Smith explains that
[t]he failure of counsel to provide [sic] transcript in support of this Colorable
Claim for the Court of Appeals review prejudiced Mr. Smith's appeals as the
State Appellate court held 'Appellant has failed to provide this court with a
transcript containing the voir dire process.' 'Nonetheless, he (Petitioner) makes a
specific argument that the State has taken an 'Inconsistent position when it comes
to striking black jurors versus white jurors' However, the court added 'without the
transcript, we are unable to reach the merits of this contention.' Adding that, ' It is
Appellant's responsibility to supply the record demonstrating the error presented
on appeal.' (page 12 through 13 of Court of appeals opinion) citing App. Rule
9(B) and 10(A)."  ECF No. 15 at 29.

(5:08CV02805)

 ECF No. 15 at 30.  Respondent contends that Smith cannot demonstrate the requisite "cause and prejudice" to overcome his procedural default.  ECF No. 8 at 13-14.

　　　To establish cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Carrier*, 477 U.S. at 488.  Smith presents no showing of cause other than reiterating his first Ground for Relief and making blanket statements like " this claim is material to the outcome of the case because the deprivation resulted in the denial of fundamental fairness to the petitioner."  ECF No. 15 at 28. Smith has presented no evidence of any objective factor that may have impeded his efforts to comply with the state procedural rule that clearly states he should timely file his joint 26(A) and 26(B) Application.  Therefore, he has failed to establish cause for the procedural default of his ineffective assistance of appellate counsel claim.

　　　Where a petitioner fails to show cause, the court need not consider whether he has established prejudice.  *Umbarger*, 2008 WL 1732950 * 4; *see Engle*, 456 U.S. at 134 n. 43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985), *cert. denied*, 474 U.S. 831 (1985).

### b.  Miscarriage of Justice

　　　Although he cannot show evidence of "cause and prejudice," Smith's procedural default may still be excused if he establishes that a fundamental miscarriage of justice will result from the failure to consider the merits of his claims.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see Monzo v. Edwards*, 281 F .3d 568, 575 (6th Cir. 2002).  "The 'fundamental miscarriage of justice' test is met only in the 'extraordinary case' where 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  *Hargrave-Thomas v. Yukins*, 374

18

(5:08CV02805)

F.3d 383, 389 (6th Cir. 2004) (*quoting in part Carrier*, 477 U.S. at 496)).  The Supreme Court

has stated that an actual innocense claim must be based on factual innocence, not legal

innocence.  *Vinson v. Gansheimer*, 2009 WL 1514587 *8 (N.D. Ohio 2009) (*citing Epps v. Ohio

Authorities*, 2007 WL 141963, *2 (N.D. Ohio 2007)*.

"The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits

new evidence showing that 'a constitutional violation has probably resulted in the conviction of

one who is actually innocent . . . To establish the requisite probability, the petitioner must show

that it is more likely than not that no reasonable juror [or finder of fact] would have convicted

him in light of the new evidence.'"  *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004)

(internal citations omitted).  Conclusory statements are not enough; petitioner must support his

allegations with new reliable evidence that was not presented at trial.  *Vinson v. Gansheimer,*

*2009 WL 1514587 * 8 (N.D. Ohio 2009)*.

In his Revised Traverse, Smith asserts that he is "actually, innocen[t] of the charges under

which he was charged and wrongfully convicted on a purported charge of kidnaping, felonious

assault, and domestic violence . . . ."  ECF No. 15 at 1.  Smith cites no evidence or proof that he

is actually innocent.  More importantly, Smith does not present new evidence in support of a

claim of actual innocence.  Smith has therefore not shown that it is more likely than not that no

reasonable fact finder would have convicted him of felonious assault, kidnaping, and domestic

violence.  This is not the extraordinary case where a convicted defendant has shown his actual

innocence.  As such, the fundamental miscarriage of justice exception does not excuse Smith's

procedural default.  Accordingly, the undersigned recommends that Ground One be denied.

(5:08CV02805)

### ii.  Ground Two[6]

Smith asserts "that the State Court of Appeals engaged in an unreasonable application of his Federal Constitutional claims in Contravention of Federal law."  ECF No. 15 at 31.  In his Petition, Smith states that "the Court failed to independently review the entire trial record in determining the claim of jury misconduct and order of the transcript."  ECF No. 1 at 4.  In his Revised Traverse, Smith explains that the  "State Appellate review of his assignment of errors on direct appeal[] as of right[] and its independent duty and 'power to do justice' is contrary to United States Supreme Court holding in *Tinder v. United States*, 345 U.S. 565, 570 (1953); other rulings and federal precedents."  ECF No. 15 at 31.

Smith cites as an example, the fact that the State appellate court failed to determine the merits of his *Batson* challenge.  Smith asserts that because the State appellate court did not "address whether or not appellate counsel was defective as well as identify[] alternative methods of ensuring fair and adequate review of [the] claim [, the failure] constitutes an 'Unreasonable Application' Prong of section 2245(d)(1)."  ECF No. 15 at 32.  Smith also cites *Mason v. Hanks*, 97 F.3d 887, 902 (7th Cir. 1996), for the proposition that "When we are convinced that a petitioner might well have won his appeal on a significant and obvious question of state law that his counsel omitted to pursue we are compelled to conclude–that the appeal was not fundamentally fair and that the resulting in affirma[tion] of is conviction is not reliable."  ECF No 15 at 32-33.

Construing Smith's allegations in ground Two liberally, however, it appears that Smith

---

[6] Ground Two alleges: The State Appellate Court engaged in an Unreasonable Application of Federal Law.

20

(5:08CV02805)

interprets § 2254 to mean when the State appellate court declined to review his *Batson* challenge claim on the merits because there was no transcript available, that court some how "engaged in an unreasonable application" of Federal law. This is an incorrect interpretation of the statute.[7]

As importantly, as Respondent aptly pointed out, Smith has not fairly presented Ground Two to an Ohio State court. Respondent contends that if Ground Two is somehow connected to a previous assignment of error it is now procedurally defaulted "because Smith never raised it in any proceeding in the state court and now, would be prevented from doing so due to Ohio's doctrine of *res judicata*." Respondent further contends that even if Smith was raising a claim that he presented in his untimely joint 26(B) and (A) Application, pursuant to *Maupin*, his claim would still be barred from habeas review due to procedural default.

Under the first prong of *Maupin*, the Court considers whether Smith has failed to comply with a state procedural rule. The Court finds that Smith failed to raise the instant claims on direct appeal, and therefore is barred by *res judicata*. *See Perry,* 226 N.E.2d at 108. Secondly, the Court would typically consider whether the state court has enforced its rule. Because Ground Two was never fairly presented to the state courts, the Court finds that they are nevertheless procedurally defaulted. *See Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002) ("To begin, this claim was not raised in the state courts or in the district court. It is therefore both procedurally defaulted and waived.").

Turning to the fourth prong of the *Maupin* test, the Court must consider whether Smith

---

[7] A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano,* 237 F.3d at 729-31. If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply. *Id.* at 730

(5:08CV02805)

has demonstrated cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Thompson*, 501 U.S. at 751.

To show cause sufficient to excuse a failure to raise claims on direct appeal, petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Umbarger v. Hofbauer*, 2008 WL 1732950 * 3 (W.D. Mich. Apr. 10, 2008) (*quoting Carrier*, 477 U.S. at 488; *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991)).

Smith has failed to point to any "objective factors" that contributed to his default. ECF Nos. 15 and 1.  Instead, Smith contends that the state court's finding was "an unreasonable application of his Federal Constitutional claims in Contravention of Federal law" and rather than demonstrate a legitimate excuse for his default, Smith primarily reiterates and expounds upon his claim. ECF No. 15 at 31.  Accordingly, the undersigned fails to find that any constitutional violation has occurred that would result in "cause" to excuse Smith's default.  The Court will not address "prejudice" here because, where a petitioner fails to show "cause," the court need not consider whether he has established prejudice. *Umbarger*, 2008 WL 1732950 * 4; *See Engle*, 456 U.S. at 134 n. 43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985).  Also, as discussed above, Smith's assertions of "actual innocence" in his Revised Traverse, do not overcome the lack of  "cause and prejudice." ECF No. 15 at 1.  Therefore, Ground Two is procedurally defaulted, and there is no excuse to overcome the default.  As such, the undersigned finds that Ground Two should be denied.

### III.  **Evidentiary Hearing**

Smith argues that "since the merits of Smith's claims have not been fully adjudicated by

22

(5:08CV02805)

Ohio Court of Appeals, an evidentiary hearing would be appropriate in the interest of justice."

ECF No. 15 at 33.

Generally, when a petitioner files a motion for an evidentiary hearing, if the petition is not

dismissed, the judge must review the answer, any transcripts and records of state-court

proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary

hearing is warranted.  Rules governing section 2254 petitions–Rule 8(a).  If the applicant has

failed to develop the factual basis of a claim in state court proceedings, the court shall not hold

an evidentiary hearing on the claim unless the applicant shows that the claim relies on: (1) a new

rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court,

that was previously unavailable; (2) a factual predicate that could not have been previously

discovered through the exercise of due diligence and the facts underlying the claim would be

sufficient to establish by clear and convincing evidence that but for constitutional error, no

reasonable fact finder would have found the applicant guilty of the underlying offense.  28 U.S.C.

§ 2254(e)(2).

After reviewing the record and pleadings, the Court finds that Smith has not demonstrated

the need for an evidentiary hearing and that Smith has failed to show that either of his Grounds

for Relief meet the factors set out in 28 U.S.C. § 2254(e)(2).  Accordingly, the Court finds that an

evidentiary hearing is not warranted in this matter and therefore recommends denial of the

request.

## IV.  **Amendment to Petition**

Smith requests that the Court amend his petition to include "all argument presented to the

State Court of Appeals via Assignment of Errors which addresses his Federal Constitutional

23

(5:08CV02805)

violations as re-stated in his Revised Traverse for Federal habeas review . . . ."  ECF No. 15 at 33.

Motions to amend pleadings are governed by Federal Rule of Civil Procedure 15(a)(2). Under 15(a), a party may amend his pleadings once as a matter of course at any time before a responsive pleading is served.  Otherwise, the party may amend only by leave of court, which "shall be freely given when justice so requires."  Federal Rule of Civil Procedure 15(a)(2); *see Mayle v. Felix*, 545 U.S. 644, 647 (2005).

In *Foman v. Davis*, the Supreme Court set forth the following guidelines governing motions to amend under Rule 15(a):

> In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.- the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

In the instant matter, Smith does not give an adequate explanation as to why the Court should allow him to amend his petition to include "all argument presented to the State Court of Appeals via Assignment of Errors which addresses his Federal Constitutional violations . . . ."  If Smith had  made a mistake or error and truly desired to incorporate his arguments to the State appellate court into his federal writ of habeas, he had at least 6 months in which he could have done so without permission and before Respondent filed a Return of Writ.  The Court is reluctant to assist Smith in keeping an otherwise procedurally infirm petition alive by permitting him to

24

(5:08CV02805)

amend his Petition at this late date.  Accordingly, the undersigned recommends denial of Smith's

request to amend his petition.

## V.  **Recommendation**

Based upon the foregoing analysis, the undersigned Magistrate Judge finds that Grounds

One and Two of Smith's Petition are procedurally defaulted and, having failed to establish cause

and prejudice or prove actual innocence claim to excuse his procedural default, the undersigned

recommends that the Petition of Stanley E. Smith be dismissed in its entirety without further

proceedings.  The undersigned also recommends denial of Smith's request for an evidentiary

hearing and his request to amend his petition.  ECF No. 15 at 33.


      /s/ Benita Y. Pearson

Dated: August 31, 2010        United States Magistrate Judge


### **OBJECTIONS**

Objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).